# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**MARK SMALL**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
Deputy Attorney General
Indianapolis, Indiana

**PATRICK M. RHODES**
DCS, Marion County
Indianapolis, Indiana

**DEDE K. CONNOR**
Child Advocates, Inc.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF I.P., Minor Child and HIS FATHER, T.P. | ) ) ) ) ) |
| T.P. (FATHER), | ) ) |
| Appellant-Respondent, | ) ) |
| vs. | ) No. 49A02-1303-JT-283 ) |
| CHILD ADVOCATES, INC., | ) ) |
| Appellee-Guardian ad Litem, | ) ) |
| and | ) ) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marilyn Moores, Judge
The Honorable Larry E. Bradley, Magistrate
Cause No. 49D09-1207-JT-29849

**October 29, 2013**

**OPINION – FOR PUBLICATION**

**BAKER, Judge**

This case is one of several termination cases stemming from Magistrate Cartmel's resignation to reach this court. Magistrate Cartmel resigned after the hearing without reporting factual findings or conclusions to the juvenile court. As a result, the case was transferred to Magistrate Larry Bradley. Magistrate Bradley reviewed the record and reported factual findings and conclusions to Judge Marilyn Moores, who approved Magistrate Bradley's findings and conclusions and issued an order terminating Mother's parental rights.

In this case, T.P. (Father) challenges the order terminating his parental rights with regard to his minor son, I.P. Father was incarcerated on both days that the termination hearing took place, but he participated telephonically and was represented by counsel. Although Father does not challenge the substance of the order terminating his parental rights, he maintains that the judgment violated his right to due process and the provisions

of Indiana Trial Rule 63(A) because Magistrate Cartmel, the magistrate who actually heard the evidence, did not issue the recommended order.

We conclude that Magistrate Bradley's subsequent recommended order terminating Father's parental rights did not violate the trial rules or Father's right to due process. Thus, we decline to set aside the order terminating Father's parental rights and affirm the judgment of the trial court.

FACTS

I.P. was born on December 11, 2004, and formally removed from Father's care on May 9, 2011, after I.P. was found to be a Child in Need of Services (CHINS).[1] However, Father last saw I.P. in September 2010. The DCS filed a petition for the involuntary termination of parental rights between Father and I.P. on July 30, 2012, which was served on Father while he was incarcerated at the Putnamville Correctional Center (Putnamville). Father subsequently requested and received court-appointed counsel at the next scheduled hearing on August 31, 2012.

Father has a history of criminal convictions and periods of incarceration dating back to 1998 and continuing through the two days of the termination hearing that took place on December 20, 2012 and January 15, 2013. Father was represented by counsel at the hearing and he appeared by telephone from Putnamville. The Honorable Julie Cartmel (Magistrate Cartmel) of the Marion County Superior Court Juvenile Division heard the evidence during the two-day hearing.

[1] I.P.'s Mother is not a party to this appeal. At the time of the termination hearing, there was an open warrant for her arrest and her whereabouts were unknown. Appellant's App. p. 13.

It was established that Father had never scheduled visitations with I.P. because he never appeared in the CHINS court to make such a request. The last time that Father saw I.P. was in September 2010. The evidence also showed that I.P. has developed a "consistent bond" with his foster caregiver following the removal from Father. Tr. p. 120. Testimony was also presented that adoption is in I.P.'s best interests.

Following the hearing, Magistrate Cartmel took the matter under advisement. However, Magistrate Cartmel subsequently resigned before she issued a ruling. After reviewing the record,[2] Magistrate Bradley issued a recommended order to terminate Father's parental rights as to I.P. that comprised of twenty-seven findings. Magistrate Bradley stated in his order that "this matter was originally heard by [Magistrate] Cartmel prior to her resignation. . . . Upon review of the record, final recommended ruling was made by Magistrate Larry E. Bradley." Appellant's App. p. 12. The order included detailed findings of fact and conclusions of law. For instance, Magistrate Bradley's findings included the following:

12. [Father] last saw [I.P.] in September of 2010. He had no contact with his son and in March of 2011, he became incarcerated.

13. [Father] was released from jail in December of 2011, and contacted the IDCSMC in January of 2012.

14. [Father] did not participate in the CHINS action and was reincarcerated in May of 2012.

15. [Father] has a substantial criminal history consisting of nineteen convictions since 1997, six being felonies.

[2] We presume that Magistrate Bradley listened to the audiotape of the termination proceedings. Father does not contend otherwise.

16. [Father's] current outdate is in October of 2014.

. . .

18. There is a reasonable probability that the conditions that resulted in [I.P.'s] removal and continued placement outside the home will not be remedied by his father. Although [Father] testified he was in his son's life before, he had no knowledge of [I.P.'s] CHINS action until it was open for approximately a year. He did not meaningfully participate in the CHINS case when he was not incarcerated, and will be unavailable to participate until October of 2014. Given [Father's] criminal history of convictions and probation violations, it is highly probable that he will continue to be unavailable in the future.

19. Continuation of the parent-child relationship poses a threat to [I.P.'s] well-being in that it would pose as a barrier in obtaining permanency for [I.P.] through an adoption, permanency [I.P.] deserves and needs due to his special needs. Neither parent can offer [I.P.] permanency.

. . .

21. [I.P.] has been diagnosed with Reactive Detachment Disorder. [I.P.] needs a caregiver who understands his needs, acquires the skills necessary to manage his R.A.D., and provides him consistency.

22. Father met the clinician three times, and it is clear from his testimony that he is not clear on [I.P.'s] needs.

23. [I.P.] is in preadoptive foster care. His caregiver has been trained in, and is meeting, [I.P.'s] needs. She has moved her residence so that [I.P.] can remain in a school where he is doing well.

24. [I.P.] meets with a mentor, participates in sexually maladaptive therapy, and [is] in counseling. He appears to be thriving in his environment.

25. Termination of the parent-child relationship is in the best interest of [I.P.]. There is no benefit to give parents additional time where they both remain unavailable. [I.P.] has a chance to obtain permanency, [through] adoption, in an environment where he can continue to thrive.

26. There exists a satisfactory plan for the future care and treatment of [I.P.], that being adoption.

5

27. [I.P.'s] Guardian ad Litem recommends adoption as the permanency plan in [I.P.'s] best interests.

Appellant's App. p. 13. The regular judge of the Marion Superior Court, Juvenile Division, approved Magistrate Bradley's recommendation and also signed the final order terminating Father's parental rights.

Father now appeals, challenging the validity of the manner in which the final order terminating his parental rights was reached.

## DISCUSSION AND DECISION

Father claims that the termination of his parental rights as to I.P. must be set aside. Father does not challenge the substance of the termination order. Rather, his sole argument is that the final recommended ruling made by a magistrate who did not hear the evidence violated his rights to due process and the provisions of Trial Rule 63.

### I. Termination of Parental Rights—Standard of Review

The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to raise their children. Troxel v. Granville, 530 U.S. 57, 65 (2000); Bester v. Lake Cnty. Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005). But parental rights are not absolute and must be subordinated to the child's interest in determining the proper disposition of a petition to terminate parental rights. In re D.D., 804 N.E.2d 258, 264-65 (Ind. Ct. App. 2004). Thus, "parental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities." Id. at 265. The purpose of terminating parental rights is not to punish

6

parents but to protect their children. In re S.P.H., 806 N.E.2d 874, 880 (Ind. Ct. App. 2004).

When reviewing the termination of parental rights, we neither reweigh the evidence nor judge the credibility of the witnesses. In re G.Y., 904 N.E.2d 1257, 1260 (Ind. 2009). Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment below. Id.

## II. Due Process Rights and Trial Rule 63(A)

### A. Due Process

The Due Process Clause of the United States Constitution prohibits state action that deprives a person of life, liberty, or property without a fair proceeding. McBride v. Monroe Cnty. Office of Family & Children, 798 N.E.2d 185, 194 (Ind. Ct. App. 2003).

Although due process has never been precisely defined, the phrase expresses the requirement of fundamental fairness. In re M.M., 733 N.E.2d 6, 10 (Ind. Ct. App. 2000). When the State seeks to terminate the parent-child relationship, it must do so in a manner that meets the requirements of the due process clause. A fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. Thompson v. Clark Cnty. Div. of Family & Children, 791 N.E.2d 792, 795 (Ind. Ct. App. 2003).

There is hardly a more fundamental right than a parent's right to raise his or her own child. The interest of a parent in the care, custody, and control of his children is arguably one of the oldest of our fundamental liberty interests. In re E.D., 902 N.E.2d

7

316, 321 (Ind. Ct. App. 2009). Similarly, the State's interest in protecting the welfare of children who cannot protect themselves is also substantial. In re A.B., 922 N.E.2d 740, 745 (Ind. Ct. App. 2010).

In this case, the evidence demonstrated that Father has not seen I.P. since September 2010. This is primarily because of Father's repeated incarcerations and his inability to provide a safe and stable home for I.P. Since that time, I.P. has bonded to his caregivers. Tr. p. 96, 120. Delays in adjudicating a termination of parental rights case impose significant costs upon the functions of government as well as intangible costs to the lives of the children involved. Once I.P. was placed outside his home, he has never been returned. And when the hearing was conducted on the termination petition, I.P.'s family case manager recognized that I.P. required a "normal sense of a consistent life. . . and that his best chance at having that is . . . for him to be adopted with the current caregiver." Tr. p. 124.

As noted above, Magistrate Bradley reviewed the record. Absent his careful review of the evidence, he would have been unable to issue the specific and detailed findings that are contained in his proposed order. Even more compelling, Father has failed to identify any specific prejudice that resulted from Magistrate Bradley's review of the record and his subsequent recommendation of the findings of fact and conclusions of law. Indeed, one who seeks to disturb a judgment has the burden of showing an erroneous ruling and resultant prejudice. TeWalt v. TeWalt, 421 N.E.2d 415, 420 (Ind. Ct. App. 1981). The fact that a determination was made by a judge or magistrate is not

8

conclusive on the issue of neutrality. Green v. State, 676 N.E.2d 755, 761 (Ind. Ct. App. 1996). However, a judge is presumed by law to be unbiased and unprejudiced. To overcome this presumption, the party seeking to disqualify a judge must establish actual personal bias. Hite v. Haase, 729 N.E.2d 170, 176 (Ind. Ct. App. 2000).

Father was represented by counsel throughout the two-day hearing. Appellant's App. p. 5-11. Father's counsel was provided with the opportunity to cross-examine the State's witnesses, as well as the opportunity to introduce evidence in defense of the action. Under these circumstances, we have recognized that the risk of an inaccurate result decreases significantly. C.T., 896 N.E.2d at 587. It is apparent that counsel protected Father's interests during the trial, thus decreasing the chance of an error in the evidence that Magistrate Bradley had reviewed.

In sum, Father has failed to demonstrate how he was prejudiced as a result of Magistrate Bradley's issuance of findings of fact and conclusions of law and recommended order after reviewing the evidence. Thus, Father's claim that his right to due process was violated fails.[3]

### B. Trial Rule 63

Father also contends that Magistrate Bradley's order terminating the parent-child relationship between Father and I.P. is void because it violated the provisions of Indiana

---

[3] In In re D.P., No. 49A02-1303-JT-245 (Ind. Ct. App. Sept. 25, 2013), a different panel of this court determined that a Father's due process rights were violated when Magistrate Bradley reviewed the record and reported factual findings and conclusions that Judge Moores subsequently approved. In that case, the evidence was in conflict and credibility determinations had to be made. Thus, the panel in D.P. concluded that a new evidentiary hearing was required. Slip op. at 8.

9

Trial Rule 63(A). Specifically, Father maintains that Magistrate Bradley improperly entered findings in this case because he had no authority to rule on the DCS's petition to terminate Father's parental rights under the rule.

In resolving this issue, we first turn to the relevant provisions of Trial Rule 63(A):

> (A) Disability and unavailability after the trial or hearing. The judge who presides at the trial of a cause or a hearing at which evidence is received shall, if available, hear motions and make all decisions and rulings required to be made by the court relating to the evidence and the conduct of the trial or hearing after the trial or hearing is concluded. If the judge before whom the trial or hearing was held is not available by reason of death, sickness, absence or unwillingness to act, then any other judge regularly sitting in the judicial circuit or assigned to the cause may perform any of the duties to be performed by the court after the verdict is returned or the findings or decision of the court is filed; but if he is satisfied that he cannot perform those duties because he did not preside at the trial or for any other reason, he may in his discretion grant a new trial or new hearing, in whole or in part. The unavailability of any such trial or hearing judge shall be determined and shown by a court order made by the successor judge at any time.

In this case, it is apparent that Magistrate Cartmel was unavailable to suggest a final order or judgment regarding the petition to terminate Father's rights because she resigned from her magistrate position after the final hearing but before a ruling was made. Under Trial Rule 63(A), any other judge regularly sitting in the judicial circuit asked to rule in the present case could, in his or her discretion, grant a new trial or hearing if he was satisfied that the substitute duties for Magistrate Cartmel could not be performed. Similarly, Magistrate Bradley is in the same superior court as was Magistrate Cartmel. Thus, he could prepare findings from a record that was created before the initial judge, or he could have granted a new hearing if he deemed it necessary to do so. See

10

Ruby v. State, 166 Ind. App. 310, 315, 335 N.E.2d 635, 638 (1975) (finding no error when the judge who heard the evidence in a post-conviction relief case found against the petitioner but later died, and the judge's successor, with the assistance of the record of the hearing, made the required findings consistent with the previous decision). Like the circumstances in Ruby, we find no error in Magistrate Bradley's issuance of the recommended order on the pending termination petition. Rather, the decision to issue the order that was consistent with the evidence presented at the termination hearing was a logical one, and permitting the decision to linger would have delayed I.P.'s permanent placement. For all these reasons, we decline to set aside the order terminating Father's parental rights as to I.P.

The judgment of the trial court is affirmed.

FRIEDLANDER, J., concurs.

VAIDIK, J., concurs in result with an opinion.

11

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF I.P., Minor Child and HIS FATHER, T.P. | ) ) ) ) |
| T.P. (FATHER), | ) ) |
| Appellant-Respondent, | ) ) |
| vs. | )   No.  49A02-1303-JT-283 ) |
| CHILD ADVOCATES, INC., | ) ) |
| Appellee-Guardian ad Litem, | ) ) |
| and | ) ) |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) |
| Co-Appellee-Petitioner. | ) |

**VAIDIK, Judge, concurring in result.**

In this case, the majority concludes that Father's due-process rights were not violated when Magistrate Bradley reviewed the record and reported findings and conclusions to Judge Moores, despite the fact that Magistrate Bradley did not preside over the underlying evidentiary hearing. I respectfully concur in result because I agree, but my reasoning differs from the majority's.[4] I believe that Magistrate Bradley did not err because the underlying evidence was undisputed and did not require him to make any credibility determinations.

The State must satisfy the requirements of the Due Process Clause of the Fourteenth Amendment to the United States Constitution when it seeks to terminate the parent-child relationship. *Castro v. State Office of Family & Children*, 842 N.E.2d 367, 375 (Ind. Ct. App. 2006) (citation omitted), *trans. denied*. Due process in parental-rights cases involves the balancing of three factors: (1) the private interests affected by the proceeding; (2) the risk of error created by the State's chosen procedure; and (3) the countervailing government interest supporting the use of the challenged procedure. *In re C.G.*, 954 N.E.2d 910, 917 (Ind. 2011) (citing *A.P. v. Porter Cnty. Office of Family & Children*, 734 N.E.2d 1107, 1112 (Ind. Ct. App. 2000), *reh'g denied*, *trans. denied*). The private interest affected by the proceeding is substantial—a parent's interest in the care, custody, and control of his or her child. *Id.* (citation omitted). And the State's interest in protecting the welfare of a child is also substantial. *Id.* Because the State and the parent

---

[4] I concur in full with the majority's treatment of Father's Trial Rule 63(A) argument.

have substantial interests affected by the proceeding, we focus on the risk of error created by DCS's actions and the trial court's actions. *Id.*

Where evidence is heard by a trial judge who later dies or resigns from office before making findings or ruling on the evidence, the general rule is that a successor judge may not make findings or conclusions without a trial de novo. *In re A.S. et al.*, 912 N.E.2d 840, 845 (Ind. Ct. App. 2009) (citing *Farner v. Farner*, 480 N.E.2d 251, 257 (Ind. Ct. App. 1985)), *trans. denied*. "This is because 'a party to an action is entitled to a determination of the issues by the jury or judge that heard the evidence.'" *Farner*, 480 N.E.2d at 257 (citation omitted). "In a case where the resolution of a material issue requires a determination as to the weight and credibility of testimony, due process requires that the trier of fact hear all of the evidence necessary to make a meaningful evaluation." *Id.* (citation omitted). When a successor judge attempts to resolve credibility and weight-of-evidence issues without having heard the evidence and observed the demeanor of witnesses, the judge deprives the parties of an essential element of the trial process. *Urbanational Developers, Inc. v. Shamrock Eng'g, Inc.*, 175 Ind. App. 416, 372 N.E.2d 742, 746 (1978) (citation omitted). "Such an undertaking by the successor judge is against the logic and effect of the facts and circumstances before the court and amounts to an abuse of discretion." *Id.*

In two other cases stemming from Magistrate Cartmel's resignation, this Court focused on the issues of credibility and weight of evidence. In *D.P.*, another panel of this Court concluded that a father's due-process rights were violated when Magistrate Bradley

14

reviewed the record and reported factual findings and conclusions that Judge Moores later approved. *In re D.P.*, --- N.E.2d ---, No. 49A02-1303-JT-245 (Ind. Ct. App. Sept. 25, 2013). In *D.P.*, the father testified and witnesses gave conflicting testimony regarding the child's removal and the father's ability to remedy the conditions leading to removal. Because the evidence was in conflict and credibility determinations had to be made, the panel determined that a new evidentiary hearing was required. In the second case, this panel affirmed a termination order based on Magistrate Bradley's review of the record. *In re S.B. et al.*, --- N.E.2d ---, No. 49A02-1303-JT-244 (Ind. Ct. App. Oct. 29, 2013). In *S.B.*, there was no dispute that the mother, who did not appear during the termination proceedings, had failed to complete required services and had not secured stable housing or employment. There was also no dispute that the mother had stopped visiting the children and communicating with caseworkers. We concluded that Magistrate Bradley did not err by reviewing the record and reporting findings and conclusions to Judge Moores without holding a new evidentiary hearing because there were no credibility issues and the evidence was undisputed.[5]

The same is true here. Appearing by phone at the termination hearing, Father did not dispute the State's evidence against him; namely, that his extensive criminal history made him unavailable to parent his son. Father has been convicted of six felonies since I.P.'s birth, and as a result, has been incarcerated for three-fourths of the child's life. *See*

---

[5] Judge Baker concurred in result in *S.B.*, articulating the reasoning found in the majority opinion here.

15

Tr. p. 109. He has not seen I.P. in years. Father also did not dispute that his son, who has special needs, was thriving in foster care and should not be removed from his placement.

Because both the State and Father have substantial interests in this termination proceeding, when determining what process is due, we focus on the risk of error. *See C.G.*, 954 N.E.2d at 917. Any risk presented by the procedure used here is minimal. The evidence was not in dispute and there were no credibility determinations to be made. And Father was ably represented by counsel who had the opportunity to present evidence in his favor and cross-examine witnesses. *See Tillotson v. Clay Cnty. Dep't of Family & Children*, 777 N.E.2d 741, 746 (Ind. Ct. App. 2002) (Proper representation by counsel in a termination proceeding significantly decreases the risk of an inaccurate result.), *trans. denied*.

Our Courts have long recognized that parental rights "constitute an important interest warranting deference and protection," while simultaneously acknowledging that "children have an interest in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, continuous relationships." *C.G.*, 954 N.E.2d at 917 (citations omitted). Having considered Father's rights at length, it should also be said that his child, I.P., has an undeniable interest in securing permanency and finality.

Because the evidence was undisputed and Magistrate Bradley was not required to make any credibility determinations, I agree that Father's due-process rights were not violated in this case, and I respectfully concur in result.